## CHARLESTOWN.

SADDLER'S ADM'R *v.* KENNEDY'S ADM'R *et al.*

Submitted September 8, 1885.—Decided October 2, 1885.

1. A judgment against the personal representative of a decedent is not even *prima facie* evidence of the debt against the heirs of such decedent. And in a suit brought by the plaintiff in such judgment against the heirs to subject the real assets descended,

such judgment against the personal representative will not prevent the heirs from relying upon the statute of limitations as a bar to the original cause of action in such suit. (p. 640.)

2. Since the Code of 1849 of Virginia the real as well as the personal estate of the decedent is made assets for the payment of all classes of debts. While the personal estate is the primary fund for that purpose, the real estate is not only the secondary fund but it is equally liable with the personal fund for the payment of all debts. Therefore, since the adoption of said Code, there can be no right of substitution or subrogation against the real estate by creditors who have by reason of the bar of the statute of limitations lost their right to charge it directly, although they may have a subsisting judgment against the personal representative of the decedent and be thus entitled to charge the personal fund if any there be. (p. 641.)

The facts of the case are stated in the opinion of the Court:

*White & Trapnell* and *D. B. Lucas* for appellant.

*J. W. Kennedy* and *W. H. Travers* for appellee.

SNYDER, JUDGE:

Suit in equity commenced in 1878, in the circuit court of Jefferson county by N. S. White as administrator of Leonard Saddler, deceased, against the administrator and heirs of Andrew Kennedy, deceased, and others, to subject the real estate of which the said Kennedy died seized to the payment of a bond executed by Philip P. Dandridge as principal and the said Kennedy as surety to the plaintiff's intestate for $1,052.85, dated December 17, 1849, and payable twelve months after date. The cause was referred to a commissioner by whom the administration accounts of the administrator *de bonis non* of the estate of said Kennedy were settled, and by decree of October 31, 1878, the report of the commissioner was confirmed and the personal representative of said Kennedy ordered to pay to the plaintiff the said debt which was ascertained to be $2,285.03, as of that date. By subsequent proceedings, it was found that there was a small personal fund applicable to the payment of said debt, and the court by decree of April 13, 1880, directed said personal fund to be so applied and then ordered that unless the administrator or heirs of Kennedy should pay the residue of the plaintiff's debt within sixty days certain commissioners therein

appointed should sell the real estate of which Kennedy died seized to pay the same. Upon appeal by the heirs of Kennedy this Court, by its decree of December 15, 1883, reversed and set aside the said decrees of October 31, 1878 and April 13, 1880, and remanded the cause with leave to the plaintiff to amend his bill.    23 W. Va. 221.

Pursuant to the directions of this Court the plaintiff amended his bill in the circuit court, and exhibited with and made parts thereof two other suits then pending in that court, the one entitled *John Seldon, &c.* v. *John W. Kennedy et als.*, and the other *Robert Lucas* v. *Andrew Kennedy's Administrator et als.* The latter was a creditor's bill filed by the plaintiff on behalf of himself and all other creditors of the estate of Andrew Kennedy, deceased, against the administrator and heirs of said Kennedy. The former was a suit brought under the provisions of ch. 79 of the Code for the sale of the real estate of which Andrew Kennedy died seized, the bill alleging that the said real estate was not susceptible of partition, and praying that the same might be sold and the proceeds divided among the heirs of said Kennedy. In the bill in this latter suit which was filed in October, 1881, the plaintiffs aver, " that the only debt due by the estate of said Kennedy is a decree against his heirs in favor of said White administrator of Saddler rendered by this Court in October, 1878," and the prayer is, " that said farm be sold and the proceeds, after paying the debt to Saddler's administrator, be divided among those entitled thereto."

The infant defendants by guardian *ad litem* filed their answer to the bill in the present suit and the adult defendants filed thereto a formal plea of the statute of limitations. Then the plaintiff in 1884 filed a second amended bill in reply to said plea of the statute of limitations, in which he avers, that the said Andrew Kennedy died possessed of large personal estate, largely in excess of all of his indebtedness, including the plaintiff's demand; that his personal estate passed into the hands of his personal representative and was divided among the distributees and heirs of the said Kennedy, the defendants in this cause, and that by reason thereof the plaintiff's judgment at law has been unavailing; that said heirs having thus appropriated and enjoyed said personal

estate which in the hands of the administrator would have furnished a fund to satisfy the plaintiff's debt, a court of equity will subject to the payment of said debt the land which descended to said heirs, &c.

On February 25, 1885, the court entered a decree dismissing the plaintiff's bill with costs of which the following is the material portion: "This cause came on again to be heard upon the amended bill * * * the answer of the infant defendants, by &c., the plea of the statute of limitations filed by the adult defendants, and the plaintiffs demurrer thereto and joinder therein, the second amended bill filed by leave of the court at the November term, and the defendants' joint answer and general replication thereto, was argued by counsel. On consideration whereof, the court being of opinion that the statute of limitations does not cease to run in favor of the heirs of deceased Kennedy by reason of the action at law and judgment against the administrator, doth overrule said demurrer; being further of opinion, that the running of the said statute was not suspended by the reason of anything stated in the pleadings, doth sustain said plea as a good defence to the complainant's suit and dismisses the suit of the complainant; neither party desiring to present further evidence as to their issue joined."

At a subsequent term the plaintiff tendered and asked leave to file his bill of review to said decree, and on June 10, 1885, the court entered an order refusing permission to file said bill of review.

The plaintiff in his bill of review avers that so much of said decree of February 25, 1885, as states, that the cause was heard on "*the defendants' joint answer and general replication thereto,*" was inadvertently stated in the decree, and that in fact no answer was filed to the amended bills by any of the adult defendants; and that no issue was joined on the pleadings in the cause. He therefore claims that in order to remove the ambiguous character of said decree which seemed to leave it doubtful whether the issue decided by the court was one of law exclusively or whether it was one of fact also, he was entitled to have said decree set aside for error apparent upon its face and leave given him to prove the facts alleged in his second amended bill if they should be denied upon a proper issue made by the pleadings.

Upon the petition of the plaintiff an appeal with *supersedeas* was allowed him from the said decrees of February 25, 1885, and June 10, 1885.

It is the settled law of this State, whatever may be the rule in other jurisdictions, that inasmuch as there is no privity between the personal representative and the heirs of a decedent, a judgment rendered against the former is not even *prima facie* evidence against the latter; that such judgment is not a lien on the real estate descended to the heir and does not prevent the statute of limitations from running in favor of the heir when the real estate descended is sought to be subjected for the debt on which such judgment was obtained. *Laidley* v. *Kline*, 8 W. Va. 218; *Custer* v. *Custer*, 17 *Id.* 113; *Bank* v. *Good*, 21 *Id.* 455.

The plaintiff in error attempts to escape the consequences of this rule upon the ground, that he having a valid and subsisting judgment against the administrator of the decedent, and the heirs as distributees of the estate, having received personal assets which if left in the hands of the administrator would have satisfied his debt, the administrator would have a right against them to marshal and recover these assets, and he as a creditor of the decedent is entitled to be subrogated to the rights of the administrator in a court of equity. In support of this position he relies on the cases of *Pugh* v. *Russell*, 27 Grat. 789; and *Brewis* v. *Lawson*, 76 Va. 36.

I do not think these cases sustain the claim of the appellant. *Pugh* v. *Russell* involved the rights of parties in regard to debts contracted prior to the Code of Virginia of 1849, and the court decided in that case that, "Before the Code of 1849, if a judgment recovered against an executor or administrator, upon the *bond* of the deceased *binding his heirs*, was paid out of the personal estate, simple contract creditors may be substituted to the right of such creditor against the heirs."

The simple contract creditors in that case had no right to the payment of their debts out of the real estate of the decedent; and the question decided was, that as the specialty creditors had their remedy either against the personal or the real assets, if they elected to take the former and thereby

exhausted them, then the simple contract creditors, according to principles well settled, had the right to resort to the real estate to the extent the personal assets had been applied to the payment of specialty debts.—2 Lomax on Executors 418–19.

By the Code of 1849, all the real estate of the decedent was made assets for the payment of his debts whether they were specialty or only simple contract debts—both classes were put upon the same footing. Such has been the law ever since and is now the law in this State.—Sec. 3, ch. 86, Code of 1868, p. 506.

While the personal estate is the primary fund for the payment of the debts of a decedent, the real estate is not only the secondary fund for that purpose, but it is equally liable with the personal fund. The only difference is that the personal fund must be first applied. *Suckley* v. *Rotchford,* 12 Grat. 60.

Under our present statute if the personalty has been exhausted in the payment of debts, wasted by the personal representative or appropriated by the heirs, the unpaid creditors may resort to the real assets descended to the heir as of right and not by way of substitution. The decision therefore in *Pugh* v. *Russell, supra,* has no application in cases arising since 1850.

It is, however, said in that case that "If at the time of the institution of his suit against the personal representative, the appellee was not barred of his action by limitation, neither is he barred by subsequent lapse of time, in proceeding against the heir to have the assets marshaled in his favor. If, therefore, the appellee makes good *his claim to subrogation* in this case, the appellants will be precluded from relying upon the bar of the statute," citing Adams' Eq. (May. p.) 275 and note; 27 Grat. 800.

In the other case *Brewis* v. *Lawson, supra,* the court on the authority of *Pugh* v. *Russell, supra,* says : "Assuming that such defence (the statute of limitations) by the heirs was admissable, the act ceased to run at the commencement of the action at law." 76 Va. 44.

If these Virginia cases can be considered as deciding that a judgment against the administrator will prevent the statute

of limitations from running against the heirs in a suit like the one now before us, in which it is sought to subject the real estate of the decedent to the debt on which such judgment against the administrator was obtained, then those decisions are in conflict with the decisions of this Court, on that question, and can not therefore be regarded by us. In *Laidley* v. *Kline, supra,* it is expressly held that: "The heirs of a decedent are entitled to the benefit of the statute of limitations as to the plaintiffs's claims set up in his bill, or any of them, so far as the time elapsed creates a bar to them or any of them. 8 W. Va. 230. The claims thus referred to were judgments recovered by the plaintiff against the administrator of the decedent. This is a positive authority that a judgment against the administrator does not prevent the statute from running in favor of the heir, and this decision has been followed in other cases by this Court. See the cases before cited.

In *Cralle* v. *Meem,* 8 Grat. 496, and *Williams* v. *Williams,* 11 *Id.* 95, relied on by the plaintiff in error, the question of the statute of limitations was not involved. Those cases simply decided that when the personal assets did not pay the debts of the decedent the creditors had a right to resort to the real estate descended for the satisfaction of their debts. The right to do so where such debts are not barred as to the heir is not controverted in this cause.

The admission made in the partition suit of *Seldon, &c.* v. *John W. Kennedy et als.* that a decree had been rendered in this suit, in 1878, for plaintiff's debt was merely a statement of what was the fact at that time. The said decree was, however, subsequently reversed and set aside by this Court. I am unable, therefore, to discover how that admission, if it may be regarded as such can estop the heirs of Kennedy from relying upon the statute in this cause after the reversal of that decree. The reversal destroyed the evidence upon which the admission was made and left the parties free to act as though no such decree or admission had ever been made.

It is claimed by the appellant that even if his debt was barred as to the heirs, he was entitled to an account of the assets which passed at the death of Andrew Kennedy into

the hands of his administratrix, and the bill should have been sustained for this purpose if for no other. The fault of this claim is that the bill avers the death of M. A. R. Kennedy the administratrix before the institution of this suit and her personal representative is not made a party to the amended bills. In the caption of the original bill, Anthony Kennedy is mentioned as the executor of M. A. R. Kennedy, but there is no averment that he is such or any reference to him or relief asked against him as such executior in the original or the amended bills. The personal representative of the administratrix was, therefore, not a party to the suit. But if this were all, it might be contended that the court instead of dismissing the bill should have given the plaintiff leave to amend it by making such personal representative a party. It appears from the proceedings had in the cause before the former appeal, that an account of the personal fund in the hands of the administrator *de bonis non* had been ordered, a report made thereof which was confirmed by the court and the whole of said fund applied to the plaintiff's debt, consequently there was no occasion for any further account against said administrator. In regard to the first administratrix the plaintiff in his second amended bill avers that the personal fund which came into her hands "was distributed and divided among the distributees and heirs at law of the said Andrew Kennedy, the defendants in this suit." There could, therefore, be no purpose in taking an account of her transactions in this cause unless the plaintiff had the right to charge the land descended to the heirs to the extent that the personal assets had been received and appropriated by them. This he had no right to do under our statute as hereinbefore determined.

It is not necessary to decide in this cause whether or not the plaintiff in a proper action or suit is entitled to compel the estate of the administratrix and her sureties to account for any fund which may have come to her hands applicable to the payment of the debt of his intestate, or whether if her estate and her sureties are made liable to the plaintiff, they can compel the distributees to whom such fund or any part of it may have been paid to reimburse them to the extent of such payment. It is certain from what has already been said

that the plaintiff is not entitled by way of substitution or subrogation to charge the real estate descended to the heirs in this suit.   The plaintiff's demand being barred as to any right by him against the heirs or the real assets sought to be charged, the court did not err in sustaining the defence of the statute of limitations and dismissing the plaintiff's bill. The essential purpose of this suit was to charge the real assets in the hands of the heirs, and as that can not be attained, the incidental objects of the suit, if there were any, must share the fate of the substantial object and fall with it.

In the view I have taken of the questions involved in the cause, it has been unnecessary to determine whether or not any answer was filed or issues of fact presented.   Assuming that the facts alleged in the plaintiff's second amended bill were true, he was not entitled to the relief prayed, and his bill of review was necessarily immaterial and unavailing.

For the reasons aforesaid the decrees of the circuit court must be affirmed.

AFFIRMED.