# CHARLESTON.

### TRAIL *v.* TRAIL.

Submitted September 12, 1904. Decided December 20, 1904.

1. DECREE.—*Appeal.*—*Time.*

   A decree in a suit by an executor against devisees to convene creditors and administer the assets for their payment made on a report of debts by a commissioner, which decrees debts against the estate and subects its lands to their payment, is appealable, and must be appealed from within two years. (p 598).

2. RES ADJUDICATA.—*Creditor of Estate Barred.*

   A bill by an executor to administer the assets of his testator for the payment of debts states that a person named claims a debt against the estate on a specific demand, and such person is made a formal party, but does not prove his claim or appear. A decree is made allowing certain debts, but not his debt, and subjecting the estate's land to their payment. He is concluded by the decree. (p. 598).

3. ADMINISTRATION OF ASSETS.—*Priority of Debts as Decreed.*

   Under Code of 1899, chapter 86, section 9, if a creditor of an estate of a decedent fail to present his claim before a decree upon a report of debts allowing debts against the estate and subjecting lands to their payment, such decree bars him from claiming participation in the proceeds of such lands until such decreed debts are satisfied. (p. 599).

4. APPEAL.—*Decree.*—*Appeal from Decree Barred.*

   When appeal from an appealable decree is barred by time, an appeal from a later decree will not review the former decree, and the later decree cannot be reversed for an error in it arising from following the former decree. (p. 600).

Appeal from Circuit Court, Jefferson County.

Bill by George W. Trail against Alberta Trail and others. Decree for plaintiff, and defendants appeal.

*Affirmed.*

JOS. TRAPNELL and FORREST W. BROWN, for appellants.

D. B. LUCAS and MACDONALD & BECKWITH, for appellee.

BRANNON, JUDGE:

George W. Trail, executor of Charles H. Trail, filed his bill in the circuit court of Jefferson county against the divisees of Charles H. Trail and various creditors of Trail to settle the accounts of said executor, convene the creditors of Trail, and ascertain their debts, and to subject the real and personal estate of Trail to the payment of his debts. The court referred the cause to a commissioner to settle with the executor, to report of what real estate Trail died seised and the debts due from him and their priorities. The commissioner made a report specifying the real estate of said decedent, and numerous debts against him, and settled the accounts of said executor, and reported that there was no personal estate to satisfy the debts. The cause was heard upon said report, and a decree was pronounced against the estate for the payment to divers persons of their divers debts, fixing their amounts and declaring them all to be of the same class as to the assets of said estate, and decreed that the real estate reported by said reporter as the property of said decedent be sold by commissioners appointed for that purpose. This decree was pronounced 12th June, 1900. Eugene Baker was a defendant to the suit, the bill stating that he claimed a debt against Trail's estate by reason of Trail having been a deputy of Baker, who was sheriff of Jefferson county, on account of tax bills for collection, for which he was to account to Baker. The report of the commissioner did not report any debt in favor of Baker. Baker did not except to the report. On February 21, 1902, Baker filed a petition stating that Trail had been his deputy as sheriff and received tax books and collected taxes, and on that account he was indebted to Baker in a sum left blank in said petition, and it prayed that Baker's debt might be audited and paid out of the estate. On the 2d June, 1902, he filed an amended petition setting up the same thing as to the indebtedness and claiming that it amounted to $2,880.25, and asking its payment out of the assets of said estate. On the same date he filed an answer setting up his claim. He filed no evidence of Trail's indebtedness.

The sale commissioner proceeded from time to time to sell different pieces of real estate of said Trail, and made several

reports of such sale, which were confirmed by the court. When the commissioner would report these sales at different times the court would refer the matter of fixing the ratable shares or dividends in the several sale moneys of the various creditors whose debts had been decreed, requiring of the commissioner forthwith reports. This was done because there were several sales at different times and the matter of percentage payable on the many debts was a matter of somewhat elaborate calculation. To one of these reports Baker made an exception because the commissioner had failed to report upon his claim, the court having on 21st February, 1902, when Baker's petition was filed, referred it to the same commissioner to report upon Baker's demand. By a decree, 22d August, 1902, the court heard the cause upon the record already made and on Baker's petition, amended petition and answer, and the forthwith report of the commissioner, Cleon Moore, apportioning a fund in the hands of the sale commissioner arising from sale of a part of said realty, and the court decreed that the funds in the hands of the sale commissioner should be distributed to the creditors whose debts had been audited by the former decree under the said general order of reference, and overruled Baker's exception to the said forthwith report. Thus, the court refused to allow Baker any part of the assets to the prejudice of those creditors who had proven their demands before Commissioner Moore under the general order of reference, and whose debts had been allowed against the estate by the said decree of 12th June, 1900. The court again directed the commissioner to take proof of Baker's demand, and it was afterward reported by a commissioner's report, filed 25th February, 1903, at $2,957.70. It was ascertained and reported by the commissioner that the property of said decedent was not sufficient to pay his debts. The record fully discloses that fact. It discloses that said property will not pay the debts decreed by the decree of 12th June, 1900. An unsigned petition, said in the record to be the petition of James E. Watson and others, was filed in the case 22nd August, 1902. It states that said petitioners had joined as sureties in the bond of Baker as sheriff, and that a liability had been found to exist in favor of the state and county of Jefferson against Baker as sheriff, for which they as sureties would be liable, and that thus they were interested in having the property of Trail, because he was Baker's deputy, applied

to pay a liability of Trail to Baker by reason of Trail's having been Baker's deputy—the same liability specified above. They specified no amount of liability; they simply prayed that fund in the case arising from said sale of Trail's property be retained in the hands of a receiver to await the liabilities of the bondmen of Baker. By the said decree of 22d August, 1902, which denied relief to Baker, as above stated, the court also denied relief upon the petition of said bondmen of Baker. Baker died pending the suit and it was revived against his administrator.

By the decree of 21st February, 1900, mentioned above as ordering a reference to convene creditors, the court directed the sale of a certain piece of the realty in advance of any convention of creditors, and that property was sold and its proceeds consumed by application upon a debt due the Bank of Harper's Ferry, which had a mortgage thereon, giving it a preference over other creditors as to the property. This decree was made because some of the parties assented to it. From all these decrees the administrator of Eugene Baker and James E. Watson and others joining him in said petition have appealed.

The objection to the decree selling the piece of property in advance of the ascertainment of the debt is based on the ground that a decedent's land can not be sold until there has been such ascertainment. This is true; but it is useless to say more about that decree, for the reason that later decrees are barred, and it can not now be reversed, as appellants' counsel freely admit, it going with them.

An assignment of error claims that it was error to confirm the report of the commissioner auditing the debts, which excluded the debt of Baker. The argument is that the court should have recommitted it to inquire into the debt of Baker, though the report was not excepted to by him, it appearing that there was such a debt, since the bill alleged it. In the first place we can not affect that decree because it dates June 12, 1900, and the appeal was allowed September 10, 1903, and therefore the appeal is barred by the statute of limitation so far as that decree is concerned. It is argued, however, that an appeal from that decree is not barred, because it is not a final decree, and any error in it is to be remedied under an appeal from a later decree, as it would be carried into the subsequent decrees, which are within the appeal limit. It is very true that under the case of *Stout* v.

*Philippi,* 41 W. Va. 339, a non-appealable decree is carried forward to the date of a later appealable decree, and is reviewable upon an appeal from the later decree. But the fault in this position is, that that decree of June 12, 1900, is essentially an appealable decree, because it confirms the commissioner's report auditing debts against the estate, ascertains these debts against it, and specifies to whom they are going, and declares the assets liable, and directs the sale of the real estate to pay those debts. That decree settled the rights of the parties. For the claim that this is not an appealable decree we are cited to *Hooper* v. *Hooper,* 29 W. Va. 276. That case repels, rather than sustains, the position that the decree is non-appealable.

That case holds that a decree which sustains exceptions to a commissioner's report and recommits it is not appealable. Of course not, because it decides nothing; but that is not to say that a commissioner's report not excepted to and carried into an actual decree fixing the rights of the parties is not appealable. The opinion virtually says that it is a final decree. Appellant complains that the court did not recommit the report. Why should it have done so? Was not Baker a party? Did he not fail to except to the report? He thereby waived any objection to it. *Keck* v. *Allender,* 37 W. Va. 201. It does not appear that he moved a recommital, and if he had done so the court ought not to have granted it, because he had had his day before the commissioner, and had presented no evidence to sustain his claim. It did not appear that he had any debt. The commissioner would not have been warranted in reporting it, because there was no evidence to prove its existence or its amount. The bill did not do so. It simply stated that Trail had been Baker's deputy and had tax bills for collection, and that Baker had presented his claim to him. This feature of the bill was only a suggestion that Baker and others claimed debts against the estate. The bill did not say a word about their justness or amount. How could a commissioner, without evidence, predicate a report of Baker's debt upon that bill? The debt was peculiarly one unliquidated.

Now, as to the action of the court, in denying Baker participation along with decreed creditors in the real assets of Trail. I think the decree is final upon Baker's demand. His demand was specified in the bill. He was a party. He did not except. The decree ignored his demand and thus disallowed it; in effect

it decided against his demand. On general principles of *res judicata,* without reference to the Code, section 9, chapter 86, I think that Baker would be barred. He was made a party. The bill stated that he claimed to be a creditor on a specified demand. He could have proven it under the pleadings. Not having done so, he is concluded by decree alone, on common law principles; for if the suit is such that a party might have had the matter disposed of, he is concluded. *Rogers* v. *Rogers,* 37 W. Va. 407; *Bierne* v. *Ray,* 49 *Id.* 129; *Sheets* v. *Selden,* 7 Wallace 476. His claim was involved in the suit far. enough to make that decree bar his demand, for reason above stated. But the matter does not rest alone on the principle of *res judicata* outside the statute. I think it clear that the Code, chapter 86, section 9, bars Baker's claim, as it says when there has been a convention of the creditors of a dead man's estate before a commissioner according to that chapter, and the court decrees "a distribution of the proceeds of such real estate among such of the creditors as shall have shown themselves entitled thereto; which decree, so made, shall be a bar to the claim of any creditor of the deceased who has failed to present the same to the commissioner as required by said notice, except that if a surplus remain after such distribution, the creditor so failing may share in the same upon proving his claim at any time before a final decree is made in such suit." Now, the import of that statute is plain, its letter plain, its purpose plain. A debtor dies; it is to the interest of his creditors and heirs that his estate be wound up at once. The statute gives these creditors notice to appear before the commissioner. Certain ones appear and prove their debts, and others fail to do so. A decree is rendered for the debts reported, and the property is declared liable to such debts. That moment those creditors have fixed and vested rights upon the property, by the force and effect of a decree settling the rights of all the parties interested as creditors in that estate, which rights cannot be afterwards displaced at the instance of negligent creditors. Such a decree is a decree of distribution of the assets among the decreed creditors, because it says just what debts are to be paid out of the assets; it tells us just what the assets are to pay, and after decrees do but execute the decree fixing the rights of the party; after decrees only apply the assets upon the principles marked out, settled and fixed by the first decree. It is that decree which works the distribution in

a legal point of view; for when the special commissioner later sells the land he is told by the decree confirming the sale to pay the proceeds of the sale to the creditors entitled under the former decree; the later decree cannot make any other application than that adjudged in the former decree. If this be not so, then long after negligent creditors may come in and demand that the diligent creditors pay back money received under the former decree. We must construe the words "may decree distribution" in the light of our statute making appealable a decree "adjudicating the principles of a cause." A decree that does this is a decree of distribution under the statute. Any decree fixing debts and charging the assets with them is a decree of distibution under this statute. It is an appealable decree, I think a final decree and must be appealed from within two years. *Lehman* v. *Hinton*, 44 W. Va. 1; *Core* v. *Strickler*, 24 *Id.* 689; *Buster* v. *Holland*, 27 *Id.* 510. It is in vain to rely on appeal from later decrees than the main decree of 12th June, 1900, as they are only sequences from it—they only paid out money on debts allowed by. If even the later decrees were erroneous, the error came from that decree, and as appeal from it was barred, and it cannot be reviewed, later decrees executing it cannot be reversed. *Buster* v. *Holland*, 27 W. Va. 510. But I see no error in that decree. Appeal from later decree cannot review that decree, as it is appealable and appeal from it barred by lapse of two years. Therefore, we hold that the decree of 12th June, 1900, is an effectual bar against Baker's demand. The same may be said as to the petition of Watson and others, for similar reasons. We have several times held that a decree fixing liens upon a living man's realty and subjecting it in a judgment lien suit under Code chapter 139, section 7, bars a judgment not presented until after such decree. *Benson* v. *Snyder*, 42 W. Va. 223; *Bensemer* v. *Fell*, 35 *Id.* 15. For the point in hand these statutes are similar, having the same end in view. It is suggested that a difference exists between the two statutes from the fact that as to a dead man's estate the Code says the court "may" decree a distribution upon the report of debts whereas the other statute says "shall" decree. Now this statute was made for the benefit of creditors, and the law is that when this word "may" is in a statute made for the benefit of persons it is not simply permissive, but mandatory or compulsory. 20 Am. & Eng. Encyc. L. (2d Ed.) 237. It cannot be that when a report has been made

in a creditor's suit after due notice and the case is ready for hearing, and the creditors entitled to have their debts decreed, a public court of the country has an option to postpone it, unless cause be shown therefor. None was shown in this case. Delay was not even asked.

As to the exception to Moore's forthwith report. That was only a report touching the dividends payable out of part of the proceeds of sale to the creditors under the former decree. That was no report of debts. That report was not subject to such an exception. Exception should have been made to the first report, but it was neglected. And even at that date there was not a particle of proof of Baker's debt. It is complained that the commissioner failed to report on Baker's claim as directed by the court and went on to decree to creditors dividends out of the sale moneys. It is said the court should have recommitted the report and we are cited *King* v. *Burdett,* 44 W. Va. 561. The answer is, this was a report of dividends only. The rights of the parties had been decreed already, before Baker's petition was filed. If the debts had not been decreed there might be some force in the suggestion that the report, I mean the forthwith report of dividends, should have been recommitted. Such was the case in the case of *King* v. *Burdelt.* That case is wholly without force in this instance. It is useless to tell us that the Code, chapter 85, section 3, provides that the real estate of a decedent shall be assets for the payment of debts and all lawful demands against his estate in the order in which personal assets are to be applied, and that after preferred debts such assets go to all other debts ratably, or to cite us to section 3, chapter 86 making the real estate of a decedent liable for debts. Those provisions only declare the liability of real estate and fix the order for payment of debts; but they do not change or apply to a decree which has already ascertained what debts shall be paid. Those statutes tell a court how debts that are reported shall be decreed; but they do not give ground to overthrow a decree already passed at the instance of a party who has failed to prove his case. We do not think section 26, chapter 87, Code, relates to the case. It applies to *ex parte* settlements in the probate court, not to a creditors' suit in a circuit court. I add that it was right to allow Baker to prove his debt before a commissioner, so as to have a decree against the estate or a surplus, should one appear; but that did not say it

was to prejudice debts already decreed. For these reasons we dismiss the appeal as to the decrees of 21st February, 1900, May 1, 1900, June 12, 1900, June 4, 1901, as appeal from them is barred and affirm the decrees of February 25, 1902, August 22, 1902, and February 25, 1903.

*Affirmed.*